UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FOLIAR NUTRIENTS, INC.,

    Plaintiff,

v.       Case No. 6:13-cv-748-Orl-37KRS

PLANT FOOD SYSTEMS, INC.; and
CARL J. FABRY,

    Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants Plant Food Systems, Inc. and Carl J. Fabry's Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint, with Prejudice and Request to Treat Motion as a Motion for Summary Judgment (Doc. 64), filed November 25, 2013;

2. Plaintiff Foliar Nutrients, Inc.'s Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 83), filed February 10, 2014;

3. Plaintiff Foliar Nutrients, Inc.'s Cross-Motion for Partial Summary Judgment as to Liability on Its Breach of Contract Claim (Doc. 86), filed February 10, 2014;

4. Defendants Plant Food Systems, Inc.'s and Carl J. Fabry's Reply Memorandum in Support of Motion for Summary Judgment (Doc. 100), filed March 3, 2014;

5. Defendants Plant Food Systems, Inc.'s and Carl J. Fabry's Response in Opposition to Foliar Nutrient, Inc.'s Cross-Motion for Partial Summary

       Judgment as to Liability on Its Breach of Contract Claim (Doc. 103), filed March 12, 2014;

6. Plaintiff Foliar Nutrients, Inc.'s Surreply in Response to Defendants' Motion for Summary Judgment (Doc. 104), filed March 14, 2014; and

7. Plaintiff Foliar Nutrients, Inc.'s Reply Memorandum in Support of Its Cross-Motion for Partial Summary Judgment as to Liability on Its Breach of Contract Claim (Doc. 113), filed March 31, 2014.

Upon consideration, the Court finds that Defendants' motion (Doc. 64) is due to be granted in part and denied in part and that Plaintiff's cross-motion (Doc. 86) is due to be denied.

## BACKGROUND[1]

This action stems from a dispute between two agrichemical manufacturers over the right to produce fertilizers and fungicides containing phosphate and phosphite salts. The parties are business competitors who sell their products to commercial citrus growers throughout the United States. (*See* Doc. 64-3, ¶ 6; Doc. 84, ¶ 3.)

In 2004, prior to the initiation of this action, Plaintiff Foliar Nutrients, Inc. ("Foliar") sued Defendant Plant Food Systems, Inc. ("PFS"), claiming that PFS' products infringed several of Foliar's agrichemical patents. (Doc. 64-1, p. 3 (citing *Foliar Nutrients, Inc. v. Plant Food Systems, Inc.*, No. 6:04-cv-346-Orl-28DAB (M.D. Fla. 2004)).) Among the patents-in-suit were U.S. Patent Nos. 5,800,837 ("'837 Patent"); 5,925,383

---

[1] The facts set forth in this section are drawn from the parties' filings and supporting exhibits, are limited to those that are undisputed, and are set forth only for the purpose of ruling on the present cross-motions for summary judgment. They do not constitute findings of fact by the Court, and facts adduced at trial may differ from those set forth in this Order.

("'383 Patent"); 6,338,860 ("'860 Patent"); and 6,509,041 ("'041 Patent")—four related patents that Foliar held for fungicidal and fertilizational compositions containing phosphate and phosphite salts.[2] (*See id.*)

As part of its defense to that suit, PFS requested that the U.S. Patent & Trademark Office ("PTO") conduct an *ex parte* reexamination of the '164 and '837 patents. (*Id.* at 4; Doc. 83, p. 7.) The PTO agreed, and on April 25, 2005, it issued an Office action in which it rejected all of the claims in both patents as they existed at that time. (*See* Doc. 84-18.) The Office action prompted settlement negotiations, and in short order, the parties had settled their claims and dismissed the 2004 suit with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). (Doc. 64-6, p. 16.)

Under the terms of the settlement agreement, PFS agreed that if it continued to manufacture products containing both phosphates and phosphites, it would formulate those products according to specifications outlined in the agreement. (*Id.* at 3–4.) In exchange, Foliar agreed to pay PFS $50,000 in five annual $10,000 installments. (*Id.* at 2–3.) The parties also entered into mutual covenants not to sue, in which PFS covenanted not to raise any future challenges to the validity of the patents-in-suit and Foliar covenanted not to assert those patents against any PFS products that complied with the settlement agreement's formulation requirements. (*Id.* at 4.) The parties executed the settlement agreement on June 22, 2005, and Foliar made its first installment payment that day. (Doc. 64-1, pp. 4, 6; Doc. 83, pp. 2, 9.)

Within a year, performance of the settlement agreement broke down. Suspecting

---

[2] Those four patents are the same ones at issue in the present action. (Doc. 58, ¶¶ 23, 44, 64, 84.)

that PFS had been manufacturing noncompliant products, Foliar elected not to make the second installment payment, which was due on June 22, 2006. (Doc. 64-1, p. 6; Doc. 83, p. 9.) PFS demanded payment. (Doc. 64-3, ¶ 26.) Foliar declined to pay. (Doc. 83, p. 3.) In a series of letters, the parties attempted to resolve the conflict without resorting to litigation, but ultimately failed. (Docs. 64-8–9.)

Twice in the ensuing years, PFS sued Foliar for breaching the settlement agreement by failing to make its required payments. (Doc. 64-1, pp. 6–9; Doc. 83, p. 4.) Both times, its claims were dismissed for lack of subject matter jurisdiction. (*See id.*) Thereafter, PFS ceased its attempts to initiate further litigation. Foliar, however, did not.

On May 10, 2013, Foliar brought the instant action against PFS. (Doc. 1.) Foliar alleges four claims of patent infringement and one claim of breach of contract. (Doc. 58.)[3] All of Foliar's claims arise out of PFS' continued production of agrichemicals that purportedly fail to comply with the terms of the settlement agreement and infringe Foliar's patents. (*Id.*) PFS moved to dismiss the suit in its entirety, arguing: (1) the covenants not to sue in the 2005 settlement agreement divest the Court of subject matter jurisdiction; (2) the breach of contract claim is barred by the statute of limitations; and (3) the patent claims are barred by the doctrines of res judicata, judicial estoppel, equitable estoppel, and laches. (Doc. 64.) At the request of both parties, the Court converted the motion to dismiss into the present motion for summary judgment in light of its reference to evidence outside of the pleadings. (Docs. 67, 75.) Foliar opposes PFS' converted motion for summary judgment and moves for additional discovery pursuant to Federal Rule of Civil

---

[3] Foliar's Second Amended Complaint, the operative pleading, was filed on October 29, 2013. (Doc. 58.)

4

Procedure 56(d). (Doc. 83.) Additionally, Foliar cross-moves for partial summary judgment on its breach of contract claim. (Doc. 86.) PFS opposes. (Doc. 103.) All parties have replied. (Docs. 100, 104, 113.) On July 7, 2014, the Court held a hearing on the motions. (Doc. 133.) These matters are now ripe for the Court's adjudication.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

I. **Subject Matter Jurisdiction**

PFS first moves to dismiss this action in its entirety for lack of subject matter

5

jurisdiction.[4] (Doc. 64-1, pp. 9–10.) Relying on *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995), PFS argues that the mutual covenants not to sue in the 2005 settlement agreement divest this Court of subject matter jurisdiction over Foliar's patent infringement claims. (*Id.* at 10.) The Court disagrees.[5]

"[T]here is no authority for the proposition that a covenant not to sue stands as a jurisdictional bar to bringing a subsequent infringement claim." *Samsung Elecs. Co., v. Rambus, Inc.*, 440 F. Supp. 2d 495, 504 (E.D. Va. 2006). PFS' argument to the contrary overextends the U.S. Court of Appeals for the Federal Circuit's precedent regarding invalidity claims, which are brought pursuant to the Declaratory Judgment Act and require the continuous presence of a real and immediate controversy between the litigants in order to remain justiciable. *See MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Under *Super Sack* and its progeny, where the case or controversy underlying a patent-invalidity action is the threat that the patentee will press an allegedly invalid patent against the invalidity claimant, the patentee can unilaterally divest the court of subject matter jurisdiction over the invalidity claim by extinguishing the immediacy and reality of that threat. *See Super Sack*, 57 F.3d at 1058–60; *Revolution Eyewear v. Aspex Eyewear,*

---

[4] The Court notes that factual attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), which already permit looking beyond the four corners of the complaint for their resolution, are not typically convertible to a motion for summary judgment under Rule 12(d). *See, e.g., Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). The Court therefore proceeds with its subject matter jurisdiction analysis under Rule 12(b)(1).

[5] Though Foliar challenges only the factual sufficiency of PFS' subject matter jurisdiction arguments, the Court has an obligation to assure itself that it has subject matter jurisdiction over this action, which includes a duty to independently review the legal authority cited in support of the parties' positions. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

6

*Inc.*, 556 F.3d 1294 (Fed. Cir. 2009). One way to do so is by issuing a sufficiently broad covenant not to assert the patents-in-suit against the invalidity claimant. *Super Sack*, 57 F.3d at 1058. Additionally, if the patentee has any infringement claims pending against the invalidity claimant at the time of the covenant's execution, the patentee must move to dismiss those claims under Federal Rule of Civil Procedure 41. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 (Fed. Cir. 2006); *cf. Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–28 (2013) (addressing this procedure in the trademark context). If the combination of the covenant not to sue and the Rule 41 dismissal sufficiently diminishes the controversy underlying an invalidity claim, the claim is rendered nonjusticiable and the Court is divested of subject matter jurisdiction over it.

Significantly though, the holdings in the *Super Sack* line of cases do not extend to patent-infringement claims, which are not brought pursuant to the Declaratory Judgment Act and are therefore not subject to its unique justiciability requirements. *See* 35 U.S.C. § 271 (providing an independent statutory basis for patent infringement claims). To the contrary, the Federal Circuit has clarified that a patentee's covenant not to sue does not divest a district court of subject matter jurisdiction over infringement claims—even those that remain pending at the time of the covenant's execution.[6] *Highway Equip.*, 469 F.3d

---

[6] This is not to say that a valid covenant not to sue has no effect on subsequent litigation. A patentee who brings an infringement claim in contravention of a covenant not to sue opens itself up to a breach of contract claim. *See Tekelec, Inc. v. Verint Sys., Inc.*, 708 F.3d 658, 665 n.20 (5th Cir. 2013) (collecting cases). The infringement claim would also reignite the controversy underlying the invalidity claims under the *Super Sack* rationale.
  Moreover, under Florida law, a party can raise the existence of a covenant not to sue as an affirmative defense. *See, e.g., Shay v. First Fed. of Miami, Inc.*, 429 So. 2d 64, 65 (Fla. 3d DCA 1983); *see also Torjagbo v. United States*, 285 F. App'x 615, 618–21 (11th Cir. 2008) (discussing the validity and enforceability of a covenant not to sue under Florida law). The parties' factual disputes over the applicability and ongoing validity of the

at 1033 n.1 (observing that, in situations where a patentee unilaterally secures a *Super Sack* dismissal, the patentee's "covenant does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims raised in the Complaint under Rule 41"); *Cooper Notification, Inc. v. Twitter, Inc.*, 545 F. App'x 959, 966–67 (Fed. Cir. 2013) (same).

Accordingly, because PFS has not provided any authority indicating that the covenants not to sue in the 2005 settlement agreement deprive this Court of jurisdiction over Foliar's patent infringement and breach of contract claims in this action, PFS' motion to dismiss for lack of subject matter jurisdiction is due to be denied.

## II. Breach of Contract

PFS next challenges Foliar's breach of contract claim, in which Foliar claims that PFS' products have consistently failed to comply with the settlement agreement's formulation requirements since its execution in 2005. (*See* Doc. 58, ¶¶ 104–08; Doc. 83, pp. 22–23.) PFS argues that Foliar, having first learned of the alleged breach in 2006, is barred from bringing this claim by Florida's five-year statute of limitations on contract claims. (Doc. 64-1, pp. 24–25 (citing Fla. Stat. § 95.11(2)(b)).) Foliar counters that PFS' ongoing noncompliance with the formulation requirements amounts to a continual breach, resetting the statute of limitations each time a noncompliant product is manufactured or sold. (Doc. 83, pp. 22–23.)

Foliar's breach of contract claim operates under the premise that PFS has had a

---

covenants (*see* Doc. 64-1, pp. 10–15; Doc. 83, pp. 5–10) would be more appropriately raised in this context. However, as PFS explicitly framed its motion in terms of subject matter jurisdiction (*see* Doc. 64-1, pp. 9–10), the Court declines to construe PFS' motion as raising the parties' covenant not to sue as an affirmative defense.

continuing obligation to perform its contractual duties under the settlement agreement since its execution in 2005. Because PFS allegedly failed to perform those duties, Foliar now seeks from PFS damages as a substitute for performance. *See Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 803 (Fla. 2003) ("A breach of contract action presupposes that the contractual relationship is at an end because of a material breach by one party and damages are sought by the non-breaching party as a substitute for performance." (citation and internal quotation marks omitted)). The problem with Foliar's claim is that it is undisputed that Foliar itself has not performed its contractual obligations since June 22, 2006—the date on which Foliar's second installment payment was due. (*See* Doc. 64-1, p. 6, ¶ 9; Doc. 83, p. 3, ¶ 9.) Assuming for the purpose of Foliar's argument that, prior to the due date of the second installment payment, it learned that PFS had not been complying with the settlement agreement's formulation requirements and was therefore in material breach of the contract, Foliar had two options: (1) continue its own performance under the contract and treat PFS' noncompliance as a partial breach, limiting Foliar's damages but keeping the parties' ongoing obligations under the settlement agreement intact; or (2) treat the noncompliance as a material breach, giving rise to a claim for total breach but discharging the parties of their ongoing obligations. *See Dunkin' Donuts of Am., Inc. v. Minerva, Inc.*, 956 F.2d 1566, 1571 (11th Cir. 1992). What Foliar could *not* do was require PFS' continued performance while ceasing its own, standing idly by and accumulating damages under a continual breach theory. *See Dunkin' Donuts Franchise Rests. LLC v. D&D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1359 (M.D. Fla. 2008) ("[O]ne party to a contract may not stop performance due to an alleged breach by the other party '*and* still continue to take advantage of the contract's benefits.'" (quoting

*S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992))); *see also Hous. & Residence Life, LLC v. Universal Technical Inst. of Phx., Inc.*, No. 6:12-cv-874-Orl-28TBS, 2013 WL 4506395, at *9 (M.D. Fla. Aug. 23, 2013) (Antoon, J.) (same).

Accordingly, having opted to stop making the installment payments in 2006, Foliar could not thereafter continue to take advantage of the settlement agreement's benefits, including the formulation requirements it imposed upon PFS. With PFS' ongoing obligations under the settlement agreement discharged, any subsequent failures to formulate its products according to the agreement's requirements could not have amounted to a breach and therefore could not have reset the clock on the statute of limitations. The statute of limitations on Foliar's breach of contract thus began running in 2006 and expired well before Foliar initiated this action.[7]

As such, PFS' motion for summary judgment is due to be granted with respect to Foliar's breach of contract claim, and Foliar's cross-motion for summary judgment as to its breach of contract claim is due to be denied.

---

[7] At the hearing on the parties' cross-motions for summary judgment, counsel for Foliar argued that the conflicting evidence as to which party first breached the settlement agreement precludes summary judgment on its breach claims. (*See* Doc. 133.) That conflict, however, is immaterial to the present motion. While the parties disagree as to who first breached the settlement agreement, they agree that, at the latest, the first breach occurred in 2006. (*See* Doc. 64-1, p. 6; Doc. 83, p. 9.) Thus, by 2006, one of two things happened: either Foliar breached first, undermining its breach of contract claim, or PFS breached first and Foliar ceased performance but failed to bring a breach claim within the limitations period. Either way, PFS is entitled to judgment as a matter of law.
In any event, because Foliar is the non-movant, the Court views the evidence and all reasonable inferences drawn therefrom in Foliar's favor—meaning that, for the purpose of PFS' motion, the Court proceeds as if PFS breached first. *See Battle*, 468 F.3d at 759. As addressed above, even under that best-case factual construction, Foliar's breach of contract claim is barred by the statute of limitations.

### III. Patent Claims

#### A. Res Judicata

PFS argues that Foliar's remaining patent infringement claims are barred by the doctrine of res judicata. (Doc. 64-1, p. 15.) Specifically, PFS maintains that the accused products in this action are formulated identically to those products that Foliar targeted in its 2004 infringement suit; therefore, having had its original infringement claims dismissed with prejudice pursuant to the parties' Rule 41(a)(1)(A)(ii) stipulation, PFS contends that res judicata bars Foliar from reasserting those same patents against identical products in this suit. (*Id.* at 15–18.) The Court agrees that the res judicata effect of the stipulated dismissal limits the claims Foliar can bring in this action, but it finds that the effect bars Foliar from bringing infringement claims based on products formulated according to paragraph 3(b) of the settlement agreement, *not* claims based on products formulated identically to those listed in the 2004 litigation's complaint.

When parties stipulate to a Rule 41(a)(1)(A)(ii) dismissal as part of a settlement agreement, the res judicata effect of that dismissal is determined by the terms of the agreement, not by the allegations raised in the underlying complaint.[8] *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004). The rationale behind this position is that "[a] judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." *Id.* at 1288.

---

[8] Because "claim preclusion issues . . . do not depend on any rule of law having special application to patent cases," the Federal Circuit applies "the law of the regional circuit in which the district court sits." *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) (citation and internal quotation marks omitted).

11

Accordingly, when determining the res judicata effect of such a dismissal, courts should "attempt to effectuate the parties' intent," and "[t]he best evidence of that intent, of course, is the settlement agreement itself." *Id.* at 1289.

Here, PFS and Foliar expressly indicated in the 2004 action that they were stipulating to dismissal because they had reached a settlement agreement. (Doc. 64-6, p. 16.) In turn, the terms of that settlement agreement manifest the parties' understanding that products formulated according to paragraph 3(b) of the agreement were acceptable to Foliar—that is, they did not infringe the patents-in-suit. (*Id.* at 2–6; Doc. 83, pp. 5–6.) The res judicata effect of the 2004 litigation's dismissal with prejudice is therefore to bar Foliar from basing any subsequent infringement claim on products formulated according to the settlement agreement's requirements. *See SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 690–91 (M.D.N.C. 2011) (concluding that a similar provision addressing acceptable compositions of wooden newel posts in a settlement agreement between two post manufacturers controlled the res judicata effect of their patent dispute's dismissal).

As Foliar notes, the record before the Court relating to the formulations of the accused products in this litigation is sparse. (Doc. 83, p. 24.) The Court also accepts Foliar's representation that further discovery would permit it to better identify which of PFS' products, if any, fall outside of the formulation requirements of the settlement agreement. (*Id.* at 23.) Given the need for further discovery, coupled with the fact that the procedural posture of the pending motions resulted in their presentment at an unusually early stage in this litigation, the Court finds that PFS' motion for summary judgment on res judicata grounds is due to be denied without prejudice as premature pursuant to

Rule 54(d). PFS may raise its res judicata defense by motion again after the close of discovery.

### B. Judicial Estoppel, Equitable Estoppel, and Laches

Finally, PFS argues that Foliar's patent infringement claims are barred by the doctrines of judicial estoppel, equitable estoppel, and laches. (Doc. 64-1, pp. 18–24.) Estoppel and laches are defenses for which trial is required if genuine issues of material fact exist at the summary judgment stage. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 1043 (Fed. Cir. 1992). Given that, as addressed above, discovery remains ongoing that will affect the scope and substance of Foliar's patent infringement claims, the Court declines to rule on PFS' defenses to those claims until the record before it is complete.[9] Accordingly, PFS' motion for summary judgment on the grounds of estoppel and laches is due to be denied without prejudice pursuant to Rule 54(d). Like its res judicata defense, PFS may raise its estoppel and laches defenses again after discovery closes.

### CONCLUSION

In sum, the Court finds that it has subject matter jurisdiction over Foliar's claims, that Foliar's breach of contract claim is barred by the statute of limitations, and that PFS' motion for summary judgment as to Foliar's patent infringement claims is due to be denied without prejudice as premature.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants Plant Food Systems, Inc. and Carl J. Fabry's Dispositive Motion

---

[9] The Court additionally declines to address at this juncture PFS' patent misuse and compulsory counterclaim arguments, which were raised for the first time in its reply brief. (*See* Doc. 100, pp. 6–9.)

to Dismiss Plaintiff's Second Amended Complaint, with Prejudice and Request to Treat Motion as a Motion for Summary Judgment (Doc. 64) is **GRANTED IN PART AND DENIED IN PART**:

    a.    The motion is **GRANTED** as to Foliar's breach of contract claim (Doc. 58, ¶¶ 104–108). The Court will defer the entry of judgment in PFS' favor as to this claim until all claims in this action have been adjudicated. *See* Fed. R. Civ. P. 54(b).

    b.    The motion is **DENIED** with respect to PFS' motion to dismiss for lack of subject matter jurisdiction.

    c.    In all other respects, the motion is **DENIED WITHOUT PREJUDICE**.

2.    Plaintiff Foliar Nutrients, Inc.'s Cross-Motion for Partial Summary Judgment as to Liability on Its Breach of Contract Claim (Doc. 86) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 14, 2014.

_____
ROY B. DALTON, JR.
United States District Judge

Copies:

Counsel of Record